PD-0207-15

NO. _____

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

TROY CARNELL SADDLER Appellant

VS.

THE STATE OF TEXAS, Appellee

***************

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**************

FROM THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

AT TEXARKANA

NO. 06-14-00016-CR

GREGG COUNTY
TRIAL COURT NO. 41136-A

Tim Cone
P.O. Box 413
Gilmer, Texas  75644
State Bar #04660350

ATTORNEY FOR APPELLANT

TABLE OF CONTENTS

Page

Table of Contents……………………………………  2

Name of All Parties…………………………………  3

Index of Authorities………………………………  4

Statement of the Case………………………………  5

Statement of the Procedural History……………………..  6

Statement Declining Oral Argument……………………  6

Questions for Review…………………………………  7

Question One:  Did the Court of Appeals improperly determine the improperly admitted evidence of an extraneous matter was harmless?

Reasons for Review……………………………………  7

Argument and Authorities………………………………..  7

Prayer and Relief………………………………………  9

Certificate of Compliance………………………………..  10

Certificate of Service………………………………..  11

Appendix – Court of Appeals Opinion (the opinion is being submitted under a different envelope as Appellant's attorney is uneducated in the procedure to attach the opinion to this document)

NAMES OF ALL PARTIES

The parties to the trial court's judgment are the State of Texas and Appellant, Troy Carnell Saddler, TDCJ.

At trial, the State was represented by Gregg County Assistant Criminal District Attorneys Stacy Brownlee and Reid McCain, and, on appeal, by Zan Brown, Gregg County Assistant Criminal District Attorney, Gregg County, Texas.

Appellant was represented at trial by J. Scott Novy, 1511 Judson Road, Suite 3, Longview, Texas, and on appeal by Tim Cone, Gilmer, Texas.

## INDEX OF AUTHORITIES

PAGE

STATE CASES:

Casey v. State, 215 S.W3d 870 (Tex.Crim.App. 2007)………...          9

King v. State, 953 S.W.2d 266 (Tex.Crim.App. 1997)………...          9

Motilla v. State, 78 S.W.3d 352 (Tex.Crim.App. 2002)……….          9


RULES:

Texas Rule of Appellate Procedure, 66.3(f)……………………          7

Texas Rule of Appellate Procedure, 44.2(b)……………………          9

TROY CARNELL SADDLER                     Appellant

V.

THE STATE OF TEXAS                       Appellee


**********

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**********

TO THE HONORABLE COURT OF APPEALS:

Comes now Troy Carnell Saddler, Appellant, and respectfully urges this Court to grant discretionary review in this case.

## STATEMENT OF THE CASE

The Appellant, TROY CARNELL SADDLER, was indicted for the offense of Murder on December 15, 2011. CR3. A status hearing was held on March 21, 2013, regarding the Appellant's dissatisfaction with his court

appointed counsel. 2RR. The trial court temporarily appointed another attorney to act as co-counsel for a short period of time. 2RR7. A jury was selected in the case on December 16, 2013, with only the original trial counsel participating. 3RR. The trial began the next day and continued through December 19, 2013. 4RR-7RR. The jury convicted the Appellant of murder and, after the punishment phase, assessed a sentence of confinement of eighty years. 6RR80, 7RR129, CR101. On January 23, 2015, the Sixth Court of Appeals affirmed the conviction. The Appellant now files this Petition for Discretionary Review.

For clarity, THE STATE OF TEXAS will be referred to as "The State", and TROY CARNELL SADDLER, will be referred to as "Defendant" or "Appellant."

STATEMENT OF PROCEDURAL HISTORY

The case was appealed to the Court of Appeals, Sixth Appellate District of Texas at Texarkana. On January 23, 2015, that Court affirmed the conviction in an opinion that was not published. There was no motion for rehearing filed.

## STATEMENT DECLINING ORAL ARGUMENT

Oral argument of this case is not requested on behalf of Appellant.

## QUESTIONS FOR REVIEW

Question No. 1:

Did the Court of Appeals improperly determine the improperly admitted evidence of an extraneous matter was harmless?

## REASONS FOR REVIEW

Texas Rule of Appellate Procedure 66.3(f): A Court of Appeals has so far departed from the accepted and usual course of proceedings as to call for an exercise of the Court of Criminal Appeals power of supervision. Further, this matter should be addressed by the Court of Criminal Appeals in the best interest of justice.

## ARGUMENT AND AUTHORITIES

Orion Peoples died as a result of a single gunshot wound to his head on September 27, 2011. The only people inside the house where Mr. Peoples was shot at the time of his death were the Appellant , another male named Chris Carter and, of course, Mr. Peoples. There was circumstantial evidence that the Appellant shot Mr. Peoples and there was circumstantial evidence that Chris Carter shot Mr. Peoples. The fingerprint and DNA of the Appellant were found on a pistol located in the home that could have been the murder weapon, although that weapon was never positively identified as the murder weapon. The Court of Appeals determined, in their harm analysis that the trajectory of the fatal shot also indicated the shot came from the direction from where the Appellant was located in the room of the house at the time of the shot. Respectfully, the Appellant believes the evidence at trial shows that the fatal shot could have come from the area where Chris Carter was located at the time of the shot, as well. Further, the evidence showed that Chris Carter removed items from the crime scene before the police arrived, including a pistol Carter claimed he had possessed at the time of the shooting and a substantial amount of marihuana. The scientific test on the Appellant and Chris Carter showed Carter had recently fired a gun but did not show the Appellant had done so. Therefore, there was substantial evidence that Carter committed the murder and not the Appellant.

The extraneous matter introduced at trial was that the Appellant came to the home to buy "…a half pound of weed…" (marihuana). The Court of Appeals found that this evidence should not have been admitted and the trial court's allowing it to be admitted was error. They also determined that the error was harmless. In the latter portion of the finding, the Appellant respectfully disagrees. Under the authorities regarding a harm analysis, such evidence was harmful to the Appellant in a case, such as the case at bar, in which there exists circumstantial evidence that another person could have committed the offense other than the Appellant. The evidence clearly seems to put the Appellant in negative light. Casey v. State, 215 S.W.3d 870 (Tex.Crim.App. 2007); King v. State. 953 S.W.2d 266 (Tex.Crim.App. 1997);Motilla v. State, 78 S.W.3d 352 (Tex.Crim.App. 2002);Texas Rule of Appellate Procedure , Rule 44.2(b).

PRAYER AND RELIEF

Appellant prays that this Petition for Discretionary Review be granted; that this case be submitted to the Court after full briefing; that the Court of Appeals' decision be set aside, the case remanded to the Court of

Appeals for further review or that the Appellant receive a new trial.


Respectfully submitted,


/s/ Tim Cone


_____

TIM CONE
State Bar #04660350
Attorney for Appellant
P.O. Box 413
Gilmer, Texas  75644
903-725-6270
903-725-5494 (Fax)


## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 regarding length of documents, in that exclusive of caption, identify of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consist of 218 words.

/s/Tim Cone


_____

TIM CONE

## CERTIFICATE OF SERVICE

On the 20th day of February, 2015, copies of the foregoing Appellant's Petition for Discretionary Review were delivered to the Office of Honorable Carl Dorrough, Gregg County Criminal District Attorney, at 101 E. Methvin, Longview, Texas 75601, and the State Prosecuting Attorney, at P.O. Box 13046, Capitol Station, Austin, Texas 78711, by United States mail postage prepaid.

/s/Tim Cone

_____

TIM CONE
Counsel for Appellant



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00016-CR

TROY CARNELL SADDLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41136-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Orion Peoples was slain by a single gunshot to his head as he sat on a couch in a house in Longview, Texas, the evening of September 27, 2011. Christopher Carter and Troy Carnell Saddler, the other occupants of the house at the time Peoples was shot, each accused the other of having pulled the trigger of the gun. A grand jury indicted Saddler for the murder of Peoples and, after a jury trial, Saddler was found guilty of murder and was sentenced to eighty years' imprisonment.

On appeal, Saddler contends that (1) the trial court erred by admitting an officer's hearsay testimony because the State failed to lay the proper predicate for the hearsay testimony that was elicited, (2) the trial court erred by allowing the admission of improper extraneous matters before the jury, and (3) the evidence is insufficient to support the verdict.

We affirm the trial court's judgment because (1) error regarding improper predicate was not preserved for our review, (2) admitting evidence of extraneous matters was harmless error, and (3) sufficient evidence supports the verdict.

## I. Factual Background

When the shooting of Peoples occurred, there were three people in the house, Peoples, Saddler, and Carter, all three being in the same room. Peoples and Saddler had been sitting together on a couch, and Carter was across the room from them. Christopher Williams and Keshia Hutchins were just outside the house at the time of the shooting.

Neither Carter nor Hutchins observed any disagreement among any of the people in and around the house that day. Saddler had entered and exited the house more than once during the

2

evening, having left to talk business with other people. Eventually, though, Carter recalled Peoples sitting on the couch and asking Saddler for a cigarette. Shortly thereafter, Carter (who was then rolling a marihuana cigarette as he watched television) heard a loud bang and looked up to discover that Saddler was pointing a gun at him. Carter dove to avoid the aim, but Saddler's gun either jammed or misfired, preventing him from shooting again. Carter began to punch and wrestle with Saddler. Upon hearing the gunshot, Williams entered the house, where he saw Carter wrestle Saddler to the ground and then demand that Saddler leave. After Saddler left, Williams went to the doorway and fired one shot in Saddler's direction from the porch, but his bullet struck no one and was not located.

After the shooting, Carter cleaned up the scene, took his Sig Sauer .9 millimeter pistol and his marihuana back to his home, put them both under his bed, and returned to the scene of the murder after the police had arrived. He initially told the police that he thought he left his gun at the scene, but he later brought the gun to the lead detective, Kevin Freeman.

Although Saddler did not testify, he did consent to an audio/video-recorded interview, which was played for the jury. In that interview, he told the police that he was sitting on a couch to the left of Peoples when he saw Carter (who was sitting at a table across the room from the two of them) raise his gun and shoot Peoples in the head. Saddler said that he believed Carter intended to shoot him, but the bullet struck Peoples instead. According to Saddler's acquaintance, Alexis Bell, when Saddler left the scene, he stopped by her house, told her he had been "pistol-whupped," obtained a towel to stop the bleeding from the cut on his head, and left again. He was only with Bell for ten or fifteen minutes before he left on foot. Saddler's

3

girlfriend, Machello Owens, drove to his grandmother's house and picked up Saddler. Saddler was apprehended by the police only a few minutes later when he went to his grandmother's home.

Williams[1] and Hutchins were just outside the house when the shooting took place. Williams said that he heard what he characterized as two or three gunshots and pushed Hutchins "to get her in the car and leave." After seeing Hutchins drive away, he entered the house and saw Carter and Saddler wrestling over the gun in Saddler's hand. Williams repeatedly struck Saddler in the head with Williams' gun[2] and "led him right up out the door." Saddler started running down the street. After following Saddler out of the house, Carter told Williams that Saddler shot Peoples, and Williams realized that Peoples was dead. Williams then exited the front of the house and fired a shot at Saddler, who was running down the street.

Hutchins testified that she was preparing to leave when she heard the sound of an altercation coming from inside the house, and as she was getting into her car, she heard someone (whom she said sounded like Carter, but she could not be certain it was him) inside the house say, "'Oh, no, man, oh, hell no.'"[3] As she started her car to promptly drive away, she heard a single gunshot from inside the house.

It is undisputed that Peoples was killed by a single gunshot wound to the head, with the bullet entering just above and behind the left ear and exiting on the right side of the back of the

---

[1] Despite having the nickname "Murder," Williams was the only man at the house that night whom no one appeared to suspect of murdering Peoples.

[2] Saddler's blood was found on the floor of the house.

[3] In contrast, Williams did not hear any commotion or raised voices prior to the gunshot.

4

head.  The shooter was at least three feet away from Peoples at the time he was shot.  Peoples' body was found on a couch or loveseat on the north wall of the house, near the front door.

A bullet hole was found in the baseboard of the house's south wall, the wall opposite from where Peoples was sitting at the time of his death.  Chris Taylor, a Longview Police Detective, testified that he could determine from the trajectory of the bullet that the shooter who fired the shot into the baseboard would have been standing next to the couch on which Peoples was sitting.

A spent bullet or slug was found behind the couch in the area where Peoples was sitting at the time of his death.  A Taurus pistol was found under the table upon which the television had been sitting.  The spent bullet projectile found behind the couch was fired from the Taurus pistol, but it could not be determined when it had been fired from the gun.  The DNA of at least four different men was found on the Taurus pistol; these four people included neither Carter nor Williams, but did include Saddler, whose DNA was located on both the grip and the hammer of the pistol.  In addition to the presence of his DNA on two parts of the pistol, the fingerprint of Saddler's left index finger was found on the ammunition magazine inside the weapon.  Carter, Williams, and Saddler had guns at one time or another during the incident.  Both Carter and Saddler were tested for gunshot residue, with Carter testing positive and Saddler testing negative.

## II.     Did the Trial Court Err by Admitting Improper Hearsay Testimony?

In his first point of error, Saddler contends that the trial court erred by allowing Officer Paul Penick of the Longview Police Department to testify as to what Jessica, Saddler's sister, related to Penick about Saddler's statements the night of the murder.

5

"'The admission of hearsay evidence is a question for the trial court to resolve[,] and we review its determination under an abuse of discretion standard.'" *Bryant v. State*, 282 S.W.3d 156, 163 (Tex. App.—Texarkana 2009, pet. ref'd) (quoting *Maranda v. State*, 253 S.W.3d 762, 769 (Tex. App.—Amarillo 2007, pet. denied)). When the determination of evidentiary admissibility falls within the zone of reasonable disagreement, there is no abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Bryant*, 282 S.W.3d at 163. Further, the "[i]mproper admission of [hearsay] evidence does not constitute reversible error if the same facts are proved by other, properly admitted evidence." *Maranda v. State*, 253 S.W.3d 762, 769 (Tex. App.—Amarillo 2007, pet. dism'd, untimely filed) (citing *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).

On the same night as the murder, but after the event, Jessica was a passenger in a car that was stopped by an officer. Answering the officer's questions, Jessica confirmed that she was Saddler's sister and admitted that she had spoken with him that night. During direct examination at trial, the following was elicited from Jessica:

> Q.    [By the State] And did you indicate to the officer that Mr. Saddler had told you that he was on the run from the police that night?
>
> A.    No. I don't remember saying that. I just remember him asking do I know him and how I know him, and I said he's my brother. He say [sic] did I talk to him; I was like yes. But I don't remember saying nothing about him on the run.
>
> Q.    You don't remember saying to the officer that Mr. Saddler was on the run?
>
> A.    No.

6

Q.    Do you remember telling the officer where he could locate your brother?

A.    He didn't -- he just asked me, do you know where he might be, but he didn't say nothing about no murder or nothing like that.

Q.    I didn't ask you if he said anything about a murder. Just asked if you told the police where he could find your brother that night.

A.    Uh-huh.

Q.    And where did you tell him?

A.    I can't remember; I was drunk.

Q.    Now, the house on Beaumont Street, are you familiar with the family home on Beaumont Street?

A.    No.

Q.    You don't know anything about any of the Saddler family that stays at a house on Beaumont Street?

A.    Huh-uh.

Q.    So right now as you sit there you're not intoxicated; is that correct?

A.    No, I don't even know who live [sic] on Beaumont Street.

Q.    I'm sorry?

A.    No.

Q.    So you're not familiar with a family Saddler house on Beaumont Street is my question?

A.    No.

Q.    Wouldn't know how to describe it today if we asked you?

A.    On Beaumont, no.

7

Q.      And you don't remember asking or telling the police officers the house in which they could locate Troy Saddler that night?

A.      I told you I was drunk, I don't remember.

Q.      Okay.  So you don't remember.  It's possible you could have told the officer that?

A.      It's possible, but I don't remember.

Further during cross-examination, Jessica admitted that she was an alcoholic, that she was quite intoxicated that night, and that she had just left a party before she encountered the police officer. She further opined that because of those circumstances, she did not remember having spoken with Saddler that night and that there was a possibility that the conversation she had with him might have been another time.

The State's next witness was Officer Penick.  The State asked Penick what Jessica had related to him about what her brother had said.  Saddler objected to hearsay, and the State argued that it was a prior inconsistent statement.  The trial court overruled the objection.  Penick testified that Jessica told him that her brother, Saddler, had called her and told her that he was on the run from the law.  She said that Saddler stayed at his grandmother's house on Beaumont Street.  During his stop and discussion with Jessica, Penick saw no signs of intoxication in her demeanor (i.e., no slurred speech, no staggering or swaying, and no smell of alcohol).  By keeping the Beaumont Street neighborhood under surveillance, the police eventually captured Saddler as he got into his girlfriend's car.

Generally, hearsay is not admissible except as provided by statute or one of the exceptions listed in the Texas Rules of Evidence.  TEX. R. EVID. 802.  "'Hearsay' is a statement,

other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d); *see also* Tex. R. Evid. 801(c). Here, the State elicited testimony from Penick regarding what Jessica had told him that her brother, Saddler, had said. Therefore, by definition, Penick's testimony was hearsay.[4] *See* Tex. R. Evid. 801(d).

The trial court admitted Penick's testimony regarding Jessica's statements as impeachment evidence through a prior inconsistent statement. On appeal, Saddler contends that the trial court erred in admitting the testimony because the State failed to lay the proper predicate for admitting extrinsic evidence of a prior inconsistent statement as required under Rule 613 of the Texas Rules of Evidence.[5]

---

[4]The State contends that under Rule 801(e)(2) of the Texas Rules of Evidence, Penick's testimony was not hearsay because it was an admission by a party-opponent. *See* Tex. R. Evid. 801(e)(2). This would be true if Saddler had made the statements directly to Penick, but here, Penick was not testifying to statements made by Saddler, the party-opponent, but rather statements made by Jessica.

[5]At all times relevant to this case, Rule 613(a) stated,

> **Examining Witness Concerning Prior Inconsistent Statement**. In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2).

Tex. R. Evid. 613(a). We note that in 2014, the Supreme Court of Texas adopted proposed amendments to the Texas Rules of Evidence, including Rule 613(a). *See* Order Adopting Amendments to the Texas Rules of Evidence, Misc. Docket No. 14-9232 (Tex. Nov. 19, 2014), *printed in* 78 Tex. Bar J. 42 (Jan. 2015). These amendments, which take effect April 1, 2015, were adopted subject to any changes made in response to comments submitted by February 28, 2015; however, as it currently stands, the amended Rule 613(a) will read as follows:

As a prerequisite to presenting a complaint for appellate review, an appellant's point of error on appeal must correspond to a properly raised objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). At trial, Saddler objected on the ground of hearsay; on appeal, he contends, instead, that the State failed to lay the proper predicate for introduction of the evidence. Therefore, Saddler failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see Jones v. State*, 817 S.W.2d 854, 857 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (hearsay objection insufficient to preserve alleged failure to satisfy statutory predicate).

---

**(a)** **Witness's Prior Inconsistent Statement.**

**(1)** **Foundation Requirement.** When examining a witness about the witness's prior inconsistent statement—whether oral or written—a party must first tell the witness:

**(A)** the contents of the statement;

**(B)** the time and place of the statement; and

**(C)** the person to whom the witness made the statement.

**(2)** **Need Not Show Written Statement.** If the witness's prior inconsistent statement is written, a party need not show it to the witness before inquiring about it, but must, upon request, show it to opposing counsel.

**(3)** **Opportunity to Explain or Deny.** A witness must be given the opportunity to explain or deny the prior inconsistent statement.

**(4)** **Extrinsic Evidence.** Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement.

**(5)** **Opposing Party's Statement.** This subdivision (a) does not apply to an opposing party's statement under Rule 801(e)(2).

*Id.*

10

**III.    Did the Trial Court Err by Admitting Improper Extraneous Matter Before the Jury?**

At trial, Saddler's recorded statement to the police was played to the jury, despite Saddler's objection. In his second point of error, Saddler contends that the trial court erred in admitting the recorded statement because it contained improper extraneous matters.

"We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard, and we will not disturb the trial court's ruling if it is within the zone of reasonable disagreement." *Gotcher v. State*, 435 S.W.3d 367, 372 (Tex. App.—Texarkana 2014, no pet.) (citing *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007)). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). "An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination." *Id*. "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Id*.

When the State offered State's Exhibit 49 (a redacted version of the interview between Saddler and the lead detective in the case, Kevin Freeman), Saddler objected, arguing that "[t]here's some, at least one extraneous offense on the video, and I would object that it's prejudicial and should not be admitted."[6] In the recording, Saddler admitted going to the house

---

[6]Since counsel did not identify the extraneous offense mentioned in the interview, it is doubtful that he would have sufficiently described the offense to have preserved his objection.

to buy one-half pound of marihuana. The State maintained that the recording was being offered for several purposes:

> Number one, [Saddler] I believe has opened the door. We've had quite a bit of talk about this house and how it's related to marijuana and whether or not it is a trap house. So I certainly think that the door has been opened as far as any extraneous offense regarding marijuana goes.
> Second, Your Honor, we had filed a 404 motion and given [Saddler] notice that we did intend to offer this. We believe it goes to his motive, intent, or plan in furtherance of this offense.

The trial court overruled Saddler's objection and admitted the audio/video recording of Saddler's statement to the police.

Generally, evidence of prior bad acts or extraneous offenses is inadmissible if it has no relevance apart from character conformity. TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g). The permissible purposes to which evidence of "crimes, wrongs, or acts" may be put include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[7] TEX. R. EVID. 404(b). Extraneous-offense evidence that logically serves any of these purposes is relevant beyond its tendency to prove the character of a person in order to show action in conformity therewith and subject only to the trial court's discretion nevertheless to exclude it if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403, 404(b).

The State first argues that Saddler failed to preserve this point of error because his objection failed to specify which extraneous offenses were mentioned in the recording. Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for

---

[7] The State provided proper notice of its intent to introduce evidence of extraneous offenses as required under Rule 404 of the Texas Rules of Evidence. *See* TEX. R. EVID. 404.

appeal unless it was made to the trial court "by a timely request, objection, or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."[8] TEX. R. APP. P. 33.1(a).

Here, when Saddler objected regarding "some, at least one extraneous offense," the State responded that it had given proper notice and framed the issue in terms of marihuana-related offenses. Saddler did not object or correct the State's understanding of the extraneous offense to which he was objecting. It was apparent from the context that Saddler was referring to his statements in the audio/video recording regarding using marihuana and the fact that his purpose in going to the house was to purchase marihuana. Accordingly, Saddler preserved this point of error.[9]

The State contends that the evidence was properly admitted for the purpose of intent, motive, or plan based on the State's theory that Saddler was motivated to rob Peoples of his money[10] or drugs which possibly could have been found in the house.[11] However, the State's

---

[8]The policies underlying the requirement of specific objections are: (1) to inform the trial court of the basis of the objection to permit the court to make a ruling; and (2) to provide opposing counsel an opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). There are no technical considerations or form of words to be used to preserve error on appeal. *Id.* at 312–13. "[A]ll a party has to do to avoid forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

[9]The State also contends that Saddler opened the door to this extraneous-offense evidence by establishing, through cross-examination, that marihuana was routinely used and sold at the house on Hutchings where the shooting occurred. However, through his cross-examination, Saddler did not ask any witness why he (Saddler) was at the house, his questions did not create a false impression as to why he was there or that he had or would never use or purchase marihuana. Therefore, Saddler did not open the door to the admission of extraneous-offense evidence.

[10]Peoples had cashed his social security check earlier in the day.

13

theory as to Saddler's reasons for going there amounts to nothing more than mere speculation because it failed to produce evidence indicating that Saddler either robbed or intended to rob anyone. While such evidence is not necessary for a murder conviction, it is necessary in order to admit evidence of an extraneous offense for the purpose of intent, motive, or plan. *See* TEX. R. EVID. 403, 404(b). Accordingly, we find the trial court erred in admitting the extraneous-offense evidence in Saddler's audio/video-recorded statement.

Having determined that the evidence was erroneously admitted, we must now decide whether the admission of this evidence was so harmful as to require a new trial. The erroneous admission of extraneous-offense evidence is not constitutional error. *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007)). Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nonconstitutional error is not grounds for reversal if, "'after examining the record as a whole,'" there is "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

---

[11]If the trial court's ruling can be justified on any applicable theory of law, the ruling will not be disturbed. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

14

In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla*, 78 S.W.3d at 357 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

At the time the statement was played for the jury, the trial court gave an oral limiting instruction, and a written limiting instruction was included in the court's charge. Even though the State argued that the evidence was admissible for motive, intent, or plan, the trial court instructed and charged the jury that it could "consider the evidence of an alleged extraneous offense . . . only . . . to show the *intent*, *knowledge or identity of the defendant* in connection with the alleged offense charged in the indictment." (Emphasis added). As knowledge and identity are inapplicable to the facts of this case, Saddler argues that the erroneous instruction, as provided, expanded the purpose for which the evidence could be considered and that based on this, it caused harm. However, prior to giving the instruction, the court gave the proposed instruction and charge to the parties and asked if there was "[a]ny objection to the proposed charge . . . ?" Saddler failed to lodge any objection. Therefore, this factor weighs against a finding of harm.

We may also consider, in conducting a harm analysis, evidence of guilt. *Id.* at 356. While the evidence here is not overwhelming, there is strong circumstantial evidence to support a finding that Saddler murdered Peoples. It is undisputed that Carter, Saddler, and Peoples were the only individuals in the house at the time of the shooting. Carter testified that Saddler was

15

next to Peoples and that as Carter was watching television and preparing some marihuana, he heard a loud bang. Carter said that when he looked up, he saw Saddler pointing a gun at him and that Saddler shot at him and missed because Carter dived out of the way and the gun failed to fire again. The bullet hole found in the baseboard of the room on the wall opposite where Peoples was sitting and the trajectory of the bullet would have traveled lends support to Carter's testimony that Saddler shot at him.

In his statement to the police, Saddler maintained that when the shooting occurred, he was situated just to the left of Peoples, who was killed by a single gunshot wound to the head, with the bullet entering just above and behind the left ear and exiting on the right side of the back of his head. According to police detective Taylor, a shooter would have to have been standing just a few feet to Peoples' left in order to make the shot that caused the hole in the baseboard. It is highly unlikely (if not impossible) for Carter to have shot Peoples behind the left ear because, according to Saddler's own statement, Carter was sitting at a table across the room from him.

A spent bullet projectile was found behind the couch where Peoples was sitting at the time of his death. This spent projectile was fired from the Taurus pistol, which was also found in the room. As mentioned before, Saddler's DNA was found on the grip and hammer of the pistol, and his fingerprints were found on the gun's magazine. The weight of the evidence against Saddler operates to contradict a finding of harm.

In addition to evidence of guilt, we are to assess "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* at 355 (citing *Morales*, 32 S.W.3d at 867). During the recorded interview, Saddler indicated that he used

16

marihuana in the past, admitted that he purchased marihuana at the house in the past, and repeatedly said that he went to the house that night to purchase one-half pound of marihuana. Saddler's repeated assertions that he intended to violate the law weigh in favor of a finding of harm. "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd).

In considering how the erroneously admitted evidence might be considered in connection with other evidence in the case, the emphasis placed on that evidence by the State should be considered. *Id.* at 890. In its rebuttal, the State only briefly mentioned that Saddler claimed in his recorded statement that he went to the house "to buy a half a pound of weed, but he had no money." However, the State otherwise focused on the elements of the offense and deemphasized the importance of the marihuana-related offenses and testimony by reminding the jury that "[w]e're not here to determine whether this was a [drug] house" and "[w]e're not here to determine whether [Carter], [Williams], [Saddler], anybody else at that residence is a dealer of any type of controlled substance." This factor weighs against a finding of harm.

Taking these factors into consideration with the evidence, we find the trial court's error to be harmless.

## IV. Is there Sufficient Evidence to Support the Jury's Verdict?

In his final point of error, Saddler contends that the evidence is insufficient to support his murder conviction.

17

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Saddler committed the offense of murder if, on or about September 27, 2011, in Gregg County, Texas, he intentionally or knowingly caused the death of Peoples by shooting him with a firearm. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

Here, the element in dispute is whether there is sufficient evidence to support a finding beyond a reasonable doubt that Saddler shot Peoples. Saddler correctly argues that no witness—not even Carter—testified that they actually saw him shoot Peoples. He also emphasizes that the

18

State failed to prove that the projectile found on the floor behind the couch where Peoples was sitting was the bullet that had actually gone through Peoples' head. However, even for an offense as serious as murder, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. In cases where the available evidence is circumstantial in nature, "it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Temple v. State*, 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013) (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

At the risk of redundancy, the evidence against Saddler is repeated for this section of the opinion. It is undisputed that Peoples was sitting on a small couch or loveseat when he was killed by a single gunshot to the head. The bullet entered the left side of his head and exited from the right side, and the shooter was at least three feet away from Peoples at the time he was shot. The evidence established that Peoples died where he was sitting and was not moved after he was shot. A single spent bullet, apparently the projectile that caused Peoples' death, was found behind the couch on which Peoples was sitting when he was shot. There was no bullet hole behind or to the right of the sofa to indicate that the bullet that exited his head also exited the room. The only bullet hole found was in the baseboard of the wall opposite from where Peoples was sitting, but the bullet that caused that hole was not found.

It is undisputed that the projectile found behind the couch was fired from the Taurus .40 caliber hand gun found under the table on which the television had been sitting. The DNA of at

19

least four different men, one being Saddler, was found on the Taurus pistol. Saddler's DNA was found on the grip and hammer of the pistol. A fingerprint from Saddler's left index finger was found on the Taurus' magazine. Both Carter and Saddler were tested for gunshot residue, with Carter testing positive, and Saddler testing negative.

Carter testified that Peoples was sitting on the couch and asked Saddler for a cigarette, and then, as Carter was rolling and smoking marihuana while watching television, he heard a loud bang. He looked up to see Saddler pointing a gun at him and firing a shot at him. Carter dived out of the way, and as Saddler drew nearer, Saddler's gun jammed or misfired, and Carter began to punch and wrestle with Saddler. Both Williams and Carter testified that Carter was fighting and wrestling Saddler over the gun.

Carter was the State's primary witness, yet the lead detective in the case felt Carter was less than forthcoming during his interview. The record shows that Carter lied to the police in his initial statement, altered the murder scene after the fact, and removed both marihuana and a gun from the scene. In his statement to the police, Saddler said he saw Carter shoot Peoples. However, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to disbelieve Saddler's statement and to believe some, all, or none of Carter's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Based on these facts, we find a reasonable juror could have found beyond a reasonable doubt that Saddler intentionally or knowingly caused Peoples' death by shooting him in the head. Accordingly, we overrule this point of error and affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     December 1, 2014
Date Decided:       January 23, 2015

Do Not Publish

21

[Print this page](#)

# Envelope 4230485

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 02/20/2015 01:33:53 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Tim Cone |
| Firm Name | Tim Cone |
| Filed By | Tim Cone |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Court Appointed |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 02/26/2015 09:09:12 AM | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel in compliance with [Rule 68.4(a)]; the identity of the trial court judge is missing. Counsel has ten days to tender a corrected petition. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | PDR.pdf | [Original] |
| *Attachments* | Court of Appeals opinion -Saddler.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Zan Brown zan.brown@co.gregg.tx.us | | EServe | Sent | Yes | 02/20/2015 04:52:16 PM |